DILLINGHAM & MURPHY, LLP
CARLA J. HARTLEY (SBN 117213)
CYNTHIA C. CHEUNG (SBN 320767)
601 Montgomery Street, Suite 1900
San Francisco, California 94111
Telephone:     (415) 397-2700
Facsimile:     (415) 397-3300
cjh@dillinghammurphy.com
ccc@dillinghammurphy.com

Attorneys for Defendant
EDUCATIONAL CREDIT
MANAGEMENT CORPORATION

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEILA KINCAID, individually, and on behalf of other members of the general public similarly situated;<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>EDUCATIONAL CREDIT MANAGEMENT CORPORATION, an unknown business entity; ECMC GROUP, an unknown business entity; and DOES 1 through 100, inclusive,<br>　　　　　Defendants. | Case No.<br><br>**DEFENDANT EDUCATIONAL CREDIT MANAGEMENT CORPORATION'S NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT OF 2005**<br><br>**DEMAND FOR JURY TRIAL**<br><br>*[Concurrently filed with Civil Case Cover Sheet and Disclosure Statement]*<br><br>Complaint Filed: February 26, 2021<br>Trial Date: None Set<br>District Judge: Hon. _____ |

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFF AND HER COUNSEL OF RECORD:

1  **PLEASE TAKE NOTICE THAT**, pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. sections 1332(d), 1453, 1711 ("CAFA"), Defendant Educational Credit Management Corporation ("Defendant" or "ECMC Corp.") hereby removes to the United States District Court for the Eastern District of California, the above-captioned state court action, originally filed as Case No. 34-2021-00295336 in Sacramento County Superior Court in the State of California. Removal is proper for the reasons explained below.

## I. PROCEDURAL BACKGROUND AND TIMELINESS OF REMOVAL

1. On or about February 26, 2021, Plaintiff Sheila Kincaid ("Plaintiff") filed a Class Action Complaint ("Complaint") entitled "SHEILA A. KINCAID, an individually, and on behalf of other members of the general public similarly situated, vs. EDUCATIONAL CREDIT MANAGEMENT CORPORATION, an unknown business entity; ECMC GROUP, and unknown business entity; and DOES 1 through 100, inclusive, Defendants" in the Superior Court of the State of California, in and for the County of Sacramento, Case No. 34-2021-00295336 (the "State Court Action."). Pursuant to 28 U.S.C. section 1446(a), true and correct copies of the civil case cover sheet, summons ("Summons"), Complaint, notice of case management conference, and related documents are attached hereto as **Exhibit A.** The Complaint alleges ten causes of action: (1) Unpaid Overtime; (2) Unpaid Meal Period Premiums; (3) Unpaid Rest Period Premiums; (4) Unpaid Minimum Wages; (5) Final Wages Not Timely Paid; (6) Wages Not Timely Paid During Employment; (7) Non-Compliant Wage Statements; 8) Failure to Keep Requisite Payroll Records; (9) Unreimbursed business Expenses; and (10) Violation of California Business & Professions Code sections 17200, et seq.

2. Defendant was personally served with the Summons and Complaint on or about April 12, 2021.

3. On May 12, 2021, Defendant filed an answer to the Complaint in the state court. A true and correct copy of the answer is attached hereto as **Exhibit B.** Defendant served the answer on the Plaintiff on May 12, 2021.

4.      Plaintiff has not yet identified any of the fictitious "Doe" defendants identified in the Complaint and the citizenship of "Doe" defendants is disregarded for the purposes of removal. *See* 28 U.S.C. § 1441(b)(1); *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

5.      This notice of removal is timely pursuant to 28 U.S.C. section 1446(b) because Defendant has removed this action within 30 days of being served.

## II.     JURISDICTION

6.      Defendant is authorized to remove this action to this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA") since Plaintiff has filed a class action complaint where the amount in controversy exceeds the aggregate value of five million dollars, the number of potential class members exceeds 100, and Defendant is a citizen of a state different from Plaintiff. *See* 28 U.S.C. §§ 1332(d)(2), (d)(5) and (d)(6).[1]

### A.     The Size Of The Putative Class Exceeds 100 Members

7.      This Court has original jurisdiction pursuant to 28 U.S.C. section 1332(d) if, in addition to the other requirements of section 1332(d), the action involves a putative class of at least 100 persons.

8.      In her Complaint, Plaintiff defines the proposed class as "[a]ll current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filng of this Complaint to final judgment and who reside in California." (*See* Ex. A (Compl.) (hereinafter "Compl.") at 4:7-11.)

9.      Plaintiff is a former hourly-paid employee of Defendant, who was employed from June 5, 2012 to August 4, 2018 as a Loan Repayment Counselor. There are approximately **213** current and former non-exempt employees who worked for Defendant in California, during the

---

[1] An action may be removed by a single defendant under CAFA without the consent of the other defendants. *See* 28 U.S.C. § 1453(b).

1  time period of February 26, 2017 (four years preceding the filing of the Complaint) to present.
2  This period represents a large portion of the putative class members, but the more accurate
3  number would be necessarily larger since the Complaint contemplates a class from February 26,
4  2017 to the final judgment (hereinafter "Relevant Period"). (*See* Compl. at 4:7-11.)

   10.     Although Defendant denies that class treatment is appropriate, there can be no question that, should Plaintiff's proposed class be certified, it would consist of far more than 100 members.

   **B.     Defendant ECMC Corp. Is A Citizen Of A Different State Than Plaintiff**

   11.     Removal jurisdiction under CAFA requires only minimal diversity, which is satisfied if any member of a class of plaintiffs is a citizen of State different from any defendant. *See* 28 U.S.C. § 1332(d)(2)(A).

   12.     <u>Citizenship of Defendant ECMC Corp</u>. A corporation is a citizen of its state of incorporation and the state of its principal place of business. *See* 28 U.S.C. § 1332(c)(1). A corporation's headquarters is presumptively the location of its "principal place of business . . . ." *See Hertz v. Friend*, 559 U.S. 77, 78 (2010). At all times on or after the State Court Action was filed, Defendant has been a corporation that is incorporated in Minnesota with its headquarters located in Minneapolis, Minnesota. Thus, Defendant is a citizen of Minnesota, and not California.

   13. <u>Citizenship of Plaintiff</u>. For diversity purposes, an individual is a "citizen" of the state in which she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). An individual's domicile is the place she resides with the intention to remain or to which she intends to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Defendant is informed and believes that Plaintiff resides in California. Throughout her employment with ECMC Corp., she provided her resident address as being in Elk Grove, California. Consistent with this, Plaintiff alleges that she brings this action on her own behalf and on behalf of all other members of the general public similar situated, and the proposed class is defined as employees who, among other things, "reside in California." (*See* Compl. at 4:7:11.)

14. As such, the minimal diversity requirement of 28 U.S.C. section 1332(d) is met here because Defendant is a citizen of Minnesota, while Plaintiff is a citizen of California.

### C. The Amount In Controversy Exceeds $5 Million

15. This Court has original jurisdiction pursuant to 28 U.S.C. section 1332(d) because, in addition to the other requirements of section 1332(d), the amount in controversy exceeds $5 million, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2).

16. In considering the evidence submitted by the removing defendant, the Court must "look beyond the complaint to determine whether the putative class action meets the [amount in controversy] requirements" adding "the potential claims of the absent class members" and attorneys' fees. *See Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013).

17. In determining the amount in controversy to support its Notice of Removal, Defendant relies on preliminary calculations of the amount in controversy based on information to date and Plaintiff's request for damages and reasonable attorneys' fees as a result of her claims:[2]

> ***i.   The amount placed in controversy by Plaintiff's meal and rest break claims (Second & Third Causes of Action) exceeds $3,612,131.90.***

18. In support of her Second Cause of Action for Unpaid Meal Period Premiums, Plaintiff alleges "Defendants intentionally and willfully required Plaintiff and the other class members to work during meal periods and failed to compensate Plaintiff and other class members the full meal period premium for work performed during meal periods." (*See* Compl. ¶ 65.) Plaintiff alleges that "Defendants' conduct violates appliable IWC Wage Orders and California Labor Code sections 226.7 and 512(a)." (*Id.* ¶ 67.)

---

[2] The monetary amounts and calculations presented herein are for jurisdictional purposes only, are predicated upon allegations and damage theories alleged in the Complaint, and are presented only to establish proper basis for removal. Defendant in no way admits that Plaintiff is entitled to recovery of any portion of the monetary amounts presented to establish amounts in controversy. Defendant expressly reserves the right to challenge the monetary amounts presented in this Notice of Removal, as well as any additional or different monetary amounts presented by Plaintiff, with contradictory evidence to establish otherwise, and class certification.

19. In support of her Third Cause of Action for Unpaid Rest Period Premiums, Plaintiff alleges "Defendants willfully required Plaintiff and the other class members to work during rest periods and failed to pay Plaintiff and the other class members the full rest period premium for work performed during rest periods." (Compl. ¶ 74.) Plaintiff alleges that "Defendants' conduct violates appliable IWC Wage Orders and California Labor Code section 226.7." (*Id.* ¶ 76.)

20. Under California law, employees who miss meal and rest periods are entitled to an additional hour of pay for each day that a meal or a rest period is missed. Cal. Lab. Code § 226.7(c). "[T]he statute [permits] up to two premium payments per workday—one for failure to provide one or more meal periods, and another for failure to provide one or more rest periods." *United Parcel Serv. Wage & Hour Cases*, 196 Cal. App. 4th 57, 69 (2011). This additional pay is properly considered in determining the amount in controversy. *See, e.g.*, *Al-Najjar v. Kindred Healthcare Operating, Inc.*, Civ. No. 17–6166-PSG, 2017 WL 4862067, at *4 (C.D. Cal. Oct. 26, 2017). Because Plaintiff alleges that the failure to pay meal and rest break premiums constitutes unfair competition within the meaning of the Unfair Competition Law ("UCL"), the applicable statute of limitations for the meal and rest break violation claims is four years. Cal. Bus. & Prof. Code § 17208.

21. Defendant's calculation of the amount in controversy for Plaintiff's meal and rest claims is **$3,253,379.04**, based on the conservative estimation that each putative class member incurred one meal break penalty and one rest break penalty for every day of work, and based on information to date that the putative class earned an average of approximately $18.00 per hour.[3]

---

[3] This estimated amount in controversy is conservative because it uses the number of days worked by Plaintiff as the average number of days worked by the putative class, as Plaintiff was employed with Defendant for less than half of the Relevant Period. Plaintiff's employment with Defendant was terminated on August 4, 2018. There are 524 calendar days between February 26, 2017 and August 4, 2018. Based on information to date, Plaintiff worked an average of 5 days a week. Thus, she worked 524 * 5/7, or 374.29 days during the Relevant Period. Therefore, it is estimated that during the Relevant Period, the Putative Class Members worked 374.29 * 213, or 79,722.86 days, which times $18.00, is $1,435,011.43 for the meal break penalty. Multiplying this figure by 2, the total meal and rest period penalty is **$3,253,379.04**.

22.     In addition, depending on the nature of the alleged meal break claim, there could also be additional time worked that employees were not paid for, in the amount of: 374.29 days worked * 213 class members * $18.00 per hour * 15 minutes unpaid time worked per day = **$358,752.86**. (*See* footnote 3 of this Notice of Removal.)

        *ii.     The amount placed in controversy by Plaintiff's claim for failure to pay the minimum wage (Fourth Cause of Action) exceeds $2,072,490.00.*

23.     California Labor Code Section 1197 states that it is unlawful for an employee to pay its employees a wage lower than the minimum wage fixed by the commission, or by any applicable state or local law. Labor Code Section 1194 states that "any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation . . . ."

24.     Plaintiff alleges in support of her Fourth Cause of Action for Unpaid Minimum Wages that "Defendants failed to pay minimum wage to Plaintiff and other class members required, pursuant to California Labor Code sections 1194, 1197, 1197.1." (*See* Compl. ¶ 80.) Plaintiff provides no pertinent information as to how much time she or the members of the putative class worked without proper compensation.

25.     Defendant denies that it failed to compensate Plaintiff or the putative class members for all hours worked. However, because Plaintiff has alleged during the Relevant Period, Defendant failed to pay wages to Plaintiff and the putative class, the Court should apply to the amount in controversy requirement an extremely conservative assumption of one (1) hour of unpaid time for each putative class member during each pay period worked by the putative class.

26.     Based on preliminary calculations and information to date, the amount in controversy for Plaintiff's unpaid wages claim is in excess of **$80,940** ($10 [assuming that each employee was not compensated for one (1) hour each pay period and earned $10 per hour, which

was the lowest California minimum wage rate applicable during the class period] x 8,094 [number of pay periods worked by putative class members from February 26, 2017, to present]).[4]

27.     In addition, Plaintiff alleges in support of her Fourth Cause of Action for Unpaid Minimum Wages that "Pursuant to California Labor Code section 1197.1, Plaintiff and other class members are entitled to recover a penalty of $100.00 for the initial failure to timely pay each employee minimum wages, and $250.00 for each subsequent failure to pay each employee minimum wages." (*See* Compl. ¶ 82.) Using the conservative figures in the preceding paragraph, there are 213 initial violations and 8,094 minus 213, or 7,881 subsequent violations during the Relevant Period for all putative class members. Thus, the total penalty under section 1197.1 is $100 * 213 + $250 * 7881 = **$1,991,550.00.**

> ### iii.    *The amount placed in controversy by Plaintiff's waiting time penalty claim (Fifth Cause of Action) exceeds $859,680.00.*

28.     Labor Code Sections 201 and 202 require employers to timely pay their employees all wages owed at the end of their employment (immediately for involuntary terminations, and within 72 hours for voluntary resignations). The statute of limitations for penalties under California Labor Code Section 203 is three years. *See* Cal. Civ. Proc. Code § 338(a).[5]

---

[4] The number of pay periods worked by putative class members from February 26, 2017, to present is based on the conservative assumption that the number of pay periods worked by Plaintiff during the same period is the average number of pay periods worked by the putative class. The number of pay periods worked by Plaintiff is the number of days between February 26, 2017 and her termination date of August 4, 2018 (524 days), divided by 14 days (since employees were paid biweekly), which is 38 pay periods. 38 pay periods times 213 putative class members equals 8,094 pay periods. This estimate is conservative because Plaintiff was employed with Defendant for less than half of the Relevant Period.

[5] Although Plaintiff defines the class period as four years prior to filing of the Complaint, a claim for waiting time penalties under Labor Code Section 203 has a statute of limitations of only three years because waiting time penalties cannot be recovered as restitution under California's Unfair Competition Law, which has a statute of limitations of four years and allows employees to seek penalties for some wage and hour violations for a four year period instead of the three year period. *See Pineda v. Bank of America* 50 Cal. 4th 1389 (2010).

29. In her Fifth Cause of Action, Plaintiff alleges that Defendants "intentionally and willfully failed to pay Plaintiff and the other class members who are no longer employed by Defendants their wages, earned and unpaid, within seventy-two (72) hours of their leaving Defendants' employ." (Compl. ¶ 86.) Thus, Plaintiff alleges that she and other class members are entitled to recover from Defendants "the statutory penalty for each day they were not paid, up to thirty (30) day maximum pursuant to California Labor Code section 203." *Id.* ¶ 89.

30. Section 203 penalties "accrue not only on the days that the employee might have worked, but also on nonworkdays," for up to 30 days, and the accrual of these penalties "has nothing to do with the number of days an employee works during the month." *Mamika v. Barca* 68 Cal. App. 4th 487, 492-93 (1998).

31. Based on information to date, Defendant's preliminary calculation of the amount in controversy for Plaintiff's waiting time penalty claim is **$859,680.00**. Approximately 199 of the putative class members were terminated from the employ of Defendant between February 26, 2018 and present. The computation of the amount in controversy is based on a conservative estimate that each one of the 199 terminated putative class members was owed but not paid at least some of their wages at termination and accrued 30 days of waiting time penalties based on those unpaid wages. The putative class members worked an average of 8 hours per day and 5 days per week and earned an average of approximately $18.00 per hour. 8 hours per day * $18.00 per hours * 30 days * 199 employees = $859,680.00.

       ***iv.   The amount placed in controversy by Plaintiff's wage statement claim (Seventh Cause of Action) exceeds $75,600.***

32. California Labor Code section 226(a) states that every employer shall furnish his or her employees an accurate itemized wage statement in writing showing nine specific categories of information. Plaintiff alleges that, "Defendants have intentionally and willfully failed to provide Plaintiff and the other class members with complete and accurate wage statements." (Compl. ¶ 98).

28. California Labor Code section 226(e) provides for the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurred and one hundred dollars ($100) for each subsequent pay period. The applicable statute of limitations is one year. Cal. Code Civ. Proc. §340(a).

29. Based on information to date, approximately 9 of the putative class members were/are employed at least some time during the time period of February 26, 2020 (the outer limit of the one (1) year statute of limitations for Plaintiff's claim in light of Plaintiff's complaint having been filed on February 26, 2021) to present, and thus are eligible for wage statement penalties. Approximately 288 wage statements were issued to these 9 putative class members during the same period.[6] It is reasonable to assume, for purposes of calculating the amount in controversy, that every one of these 288 wage statements was a violation because Plaintiff alleges a combination of claims for unpaid overtime, unpaid meal and rest premiums, and unpaid minimum wages (First through Fourth Causes of Action.) Thus, the estimated total amount in controversy for this cause of action is $28,350.[7]

### v. *The amount placed in controversy by Plaintiff's attorneys' fees exceeds $1,643,162.97.*

33. Plaintiff's Complaint requests "reasonable attorneys' fees" pursuant to California Labor Code Sections 226 and 1194. (*E.g.*, Compl. at 24:3-4, 24:19, 25:18-19, 27:13, 28:1-2.)

34. Under Ninth Circuit precedent, 25% of the common fund is generally used as a benchmark for an award of attorney fees. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Barcia v. Contain-A-Way, Inc.* 2009 WL 587844, at *5 (S.D. Cal., Mar. 6, 2009, No. 07CV938-IEG-JMA) ("In wage and hour cases, '[t]wentyfive percent is considered a

---

[6] See the footnote 7.

[7] There are 441 calendar days between February 26, 2020 and present, which divided by 14 days (since employees were paid every two weeks), is 32 pay periods. Thus, 32 * 9, or 288 wage statements were issued to the 9 putative class members during this period. Of these, 9 were initial violations, and the remaining 279 were subsequent violations, thus yielding a total amount of wage statement penalties of 9 * $50 + 279 * $100, or $28,350.

benchmark for attorneys' fees in common fund cases.'") (citations omitted). Here, as demonstrated above, Defendant has established that the total amount in controversy is *at a minimum* **$6,572,651.90**, and Plaintiff has not indicated that she will seek less than 25% of a common fund in attorneys' fees. (*See e.g.*, Compl. at 23:13-28:5 [Prayer for Relief].)

35. Although Defendant has shown that the amount in controversy absent attorneys' fees surpasses the jurisdictional threshold, this Court should nevertheless include the potential attorneys' fees in evaluating jurisdiction. *See Gugielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007); *Giannini v. Nw. Mut. Life Ins. Co.*, Civ. No. 12–77 CW, 2012 WL 1535196, at *4 (N.D. Cal. 2012) (holding that defendant's inclusion of attorneys' fees to satisfy amount in controversy was reasonable where defendant's "base this amount by multiplying by twenty-five percent the sum of the amounts placed in controversy by the four claims" asserted by plaintiff.); *Jasso v. Money Mart Express, Inc.*, 2012 WL 699465, at *6-7 (N.D. Cal. 2012) (holding that "it was not unreasonable for [Defendant] to rely on" an "assumption about the attorneys' fees recovery as a percentage of the total amount in controversy" and noting that "it is well established that the Ninth Circuit 'has established 25% of the common fund as a benchmark award for attorney fees'").

36. Defendant denies that attorneys' fees are owed to Plaintiff or putative class members, and further reserves the right to contest the application of the 25% benchmark in this case. However, for purposes of this jurisdictional analysis only, Defendant relies on Plaintiff's allegations that attorneys' fees are owed. *See Guglielmino*, 506 F.3d at 700; *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 579 F.3d 994, 1000 (9th Cir. 2007), overruled on other grounds by *Standard Fire Ins. Co. v. Knowles* 133 S. Ct. 1345 (2013).

37. Using a 25% benchmark figure for attorneys' fees for Plaintiff's allegations results in estimated attorneys' fees of **$1,643,162.97**.

D. **Summary Of The Amount Placed In Controversy**

38. As described above, a reasonable and conservative estimate of the amount placed in controversy by Plaintiff's request for reasonable attorneys' fees and causes of action for

failure to pay minimum wages, failure to provide meal and rest breaks, violation of California Labor Code section 226, and violation of California Labor Code section 203 exceeds $5,000,000 even without consideration of her other claims,[8] and even though the putative class used for these calculations is a smaller number of people than the actual putative class.

| Claim | Amount in Controversy |
|---|---:|
| Meal and Rest Break Claims | $ 3,612,132 |
| Failure to Pay Minimum Wage Claim | $2,072,490 |
| Waiting Time Penalties | $859,680 |
| Wage Statement Claim | $28,350 |
| Attorney's Fees | $1,643,163 |
| **Total** | **$8,215,815** |

39.     Consequently, the amount placed in controversy by Plaintiff's claims exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. section 1332(d).

//

//

---

[8] Because the amounts in controversy for the aforementioned claims satisfy the jurisdictional minimum requirement of $5 million, Defendant does not include additional analyses for estimates of the amounts placed in controversy by Plaintiff's other allegations in the Complaint, including potential damages sought for the allegations of: (1) Unpaid Overtime (First Cause of Action); (2) Wages Not Timely Paid During Employment (Sixth Cause of Action); (3) Failure to Keep Requisite Payroll Records (Eighth Cause of Action); or (4) Unreimbursed Business Expenses (Ninth Cause of Action).
Defendant notes that Plaintiff alleges in support of her First Cause of Action for Unpaid Overtime that "Defendants failed to include all non-discretionary bonuses or other incentive-based compensation in the calculation of the regular rate of pay for overtime purposes and who reside in California." This allegation could potentially increase the average rate of pay for calculations for the meal and rest break and wage statement claims, which would further increase the amount in controversy. Because Plaintiff provides no information as to the amount of the bonuses at issue, there is no way to quantify the concomitant increase in the damages and penalties for the meal and rest break and wage statement claims. Defendant expressly reserves the right to challenge the allegation that the bonuses at issue should be included in the calculation of the regular rate of pay for overtime and/or that any such increased regular rate of pay should apply for the calculations for the meal and rest break and wage statement claims.

### III. THE PROCEDURAL REQUIREMENTS OF 28 U.S.C. SECTION 1146 ARE SATISFIED

40. In accordance with 28 U.S.C. section 1446(a), this Notice of Removal is filed in the District in which the action is pending. The Sacramento County Superior Court is located within the Eastern District of California. Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. section 1441(a).

41. In accordance with 28 U.S.C. §1446(a), copies of all process, pleadings, and orders served upon Defendant are attached hereto as **Exhibit A**.

42. In accordance with 28 U.S.C. section 1446(d), a copy of this Notice is being served upon counsel for Plaintiff, and a notice will be filed with the Clerk of the Superior Court of California for the County of Sacramento.

43. As required by Federal Rule of Civil Procedure Rule 7.1, Defendant concurrently filed its Disclosure Statement.

### IV. DEMAND FOR JURY TRIAL

44. Defendant ECMC Corp. demands a jury trial.

### V. CONCLUSION

45. For the foregoing reasons, Defendant hereby removes the above-entitled action to the United States District Court from the Sacramento County Superior Court.

DILLINGHAM & MURPHY, LLP
CARLA J. HARTLEY
CYNTHIA C. CHEUNG

Date: May 12, 2021       By:      /s/ Cynthia C. Cheung
                                  Attorneys for Defendant
                                  Educational Credit Management Corporation