UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEILA KINCAID, individually, and on behalf of other members of the general public similarly situated;<br><br>Plaintiff,<br><br>v.<br><br>EDUCATIONAL CREDIT MANAGEMENT CORPORATION, an unknown business entity; ECMC GROUP, an unknown business entity; and DOES 1 through 100, inclusive,<br><br>Defendants. | No. 2:21-cv-00863-TLN-JDP<br><br>**ORDER** |

This matter is before the Court on Plaintiff Sheila Kincaid's ("Plaintiff") Motion to Remand. (ECF No. 6.) Defendants Educational Credit Management Corporation and ECMC Group (collectively, "Defendants") filed an opposition. (ECF No. 7.) Plaintiff filed a reply. (ECF No. 12.) For the reasons set forth below, the Court DENIES Plaintiff's motion.

///
///
///
///

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendants employed Plaintiff and other individuals as hourly-paid or non-exempt employees within the State of California. (ECF No. 1-1 at 10.) On February 26, 2021, Plaintiff filed this putative class action in Sacramento County Superior Court, alleging various state law wage and hour claims. (*Id.* at 4.) On May 12, 2021, Defendants removed the case to this Court pursuant to the Class Action Fairness Act ("CAFA"). (ECF No. 1.) Plaintiff moved to remand on June 11, 2021, arguing Defendants fail to show by a preponderance of the evidence that the requisite $5 million amount in controversy has been met. (ECF No. 6.)

## II. STANDARD OF LAW

A civil action brought in state court, over which the district court has original jurisdiction, may be removed by the defendant to federal court in the judicial district and division in which the state court action is pending. 28 U.S.C. § 1441(a). CAFA gives federal courts original jurisdiction over certain class actions only if: (1) the class has more than 100 members; (2) any member of the class is diverse from the defendant; and (3) the aggregated amount in controversy exceeds $5 million, exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(d)(2), (5)(B).

Congress enacted CAFA "specifically to permit a defendant to remove certain class or mass actions into federal court" and intended courts to interpret CAFA "expansively." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). As a general rule, removal statutes are to be strictly construed against removal. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). However, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). Nonetheless, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court. 28 U.S.C. § 1447(c).

A defendant seeking removal under CAFA must file in the federal forum a notice of removal "containing a short and plain statement of the grounds for removal." *Dart Cherokee*, 574 U.S. at 83 (quoting 28 U.S.C. § 1446(a)). The notice of removal "need not contain evidentiary submissions," rather a defendant's "plausible allegation that the amount in controversy exceeds the jurisdictional threshold" suffices. *Id.* at 84, 89. When "a defendant's assertion of the amount

2

in controversy is challenged . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88. The parties may submit evidence outside the complaint including "affidavits or declarations or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Hender v. Am. Directions Workforce LLC*, No. 2:19-cv-01951-KJM-DMC, 2020 WL 5959908 *2 (E.D. Cal. Oct. 7, 2020) (citation omitted).

When "the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof, the chain of reasoning and the underlying assumptions must be reasonable, and not constitute mere speculation and conjecture." *Id.* (citing *Ibarra*, 775 F.3d at 1197–99). "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198. Then "the district court must make findings of jurisdictional fact to which the preponderance standard applies." *Dart Cherokee*, 574 U.S. at 89 (internal citation omitted).

### III.  ANALYSIS

In her motion to remand, Plaintiff argues Defendants' amount in controversy estimates are unreasonable because Defendants did not provide evidence to support those estimates in the notice of removal. (ECF No. 6 at 7–8.) In opposition, Defendants argue the amount in controversy exceeds $5 million based on Plaintiff's own allegations and the newly submitted declaration of Paula Jahraus ("Jahraus Declaration"), Defendants' Employee Relations and Human Resources Operations Manager. (ECF No. 7 at 2; ECF No. 9 at 1.) More specifically, Defendants estimate the total amount in controversy exceeds $7,836,619.79 based on the class claims for unpaid overtime, meal periods, rest periods, failure to pay minimum wage, waiting time penalties, inaccurate wage statements, and attorneys' fees. (ECF No. 7 at 14–15.) In reply, Plaintiff argues the Jahraus Declaration is insufficient because it "fails to specify with particularity the documents she relies on, other than referring to her review of 'records and other information' and 'data.'" (ECF No. 12 at 2.) Notably, Plaintiff did not submit evidence disputing Defendants' calculations with her reply nor does she offer any alternative calculations.

As a preliminary matter, Defendants were not required to submit evidence with the notice of removal. *See Dart Cherokee*, 574 U.S. at 84, 89 (holding that the notice of removal "need not contain evidentiary submissions" and defendant's "plausible allegation that the amount in controversy exceeds the jurisdictional threshold" is sufficient at that stage). To the extent Plaintiff challenges the Jahraus Declaration in her reply, courts have found this type of evidence to be sufficient for establishing the amount in controversy in similar cases. *See Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1186 (E.D. Cal. 2020) (finding a declaration from defendant's "Associate Director of the Operational Finance Department" based on "his personal knowledge of [d]efendant's business records" to be sufficient); *Andrade v. Beacon Sales Acquisition, Inc.*, No. CV 19-06963-CJC(RAOx), 2019 WL 4855997, at *4 (C.D. Cal. Oct. 1, 2019) (holding "a declaration from a knowledgeable employee based on her analysis of regularly kept and created business records" to be sufficient). In the instant case, the Jahraus Declaration establishes the following for the putative class: the average hourly pay rate, the number of employees in the class, the full-time status of employees, the number of workweeks, the average hours worked, and the schedule for the issuance of pay statements. (ECF No. 9 at 2–3.) Jahraus further declares that, in preparation for the declaration, she reviewed all relevant records. (*Id.* at 2.) Based on the content of the Jahraus Declaration — and in the absence of any evidence from Plaintiff to the contrary — the Court concludes that it lays a sufficient evidentiary foundation to determine the amount in controversy.

Having found the declaration is sufficient, the Court will consider the amount in controversy for Plaintiff's claims.

                    *i.*      *Failure to Pay Minimum Wage*

Plaintiff claims that she and other class members were not consistently paid minimum wage. (ECF No. 1-1 at 12, 19.) In the notice of removal, Defendants argue that since "Plaintiff provides no pertinent information as to how much time she or the members of the putative class worked without proper compensation," it is fair to assume an hour of unpaid time for each class member during each pay period. (ECF No. 1 at 7.) In moving to remand, Plaintiff contends that

1  "nowhere in the Complaint does Plaintiff allege that she and the class members were missing
2  compensation for hours worked every single pay period." (ECF No. 6 at 19.)

3  Plaintiff seeks restitution for herself and all others similarly situated for unpaid minimum
4  wages in violation of California Labor Code §§ 1194, 1197, and 1197.1.  Pursuant to those
5  sections, Plaintiff and the other class members "are entitled to recover the unpaid balance of their
6  minimum wage compensation as well as interest, costs, and attorney's fees, and liquidated
7  damages in an amount equal to the wages unlawfully paid and interest thereon." (ECF No. 1-1 at
8  19.)  Section 1197.1 stipulates that Plaintiff is "entitled to a penalty of $100 for initial timely
9  failure to pay each employee minimum wages, and $250.00 for each subsequent failure to pay
10  each employee minimum wages." (*Id.*)  Defendants assume one hour of unpaid minimum wage
11  per week per putative class member (a 20% violation rate). (ECF No. 7 at 9.)  Defendants'
12  calculation is as follows: unpaid minimum wage (aggregate 24,947 workweeks x average state
13  minimum wage from 2017 to present which is $12.10 = $301,858.70) + liquidated damages
14  ($301,858.70) + penalties ((213 initial pay periods x $100) + ($250 x aggregate 12,963
15  subsequent pay periods) = $3,262,050) = $3,865,767.40.  (*Id.*)

16  Defendants argue that assuming one hour of unpaid minimum wage per week is
17  reasonable because "assumptions made part of the defendant's chain of reasoning need not be
18  proven; they instead must only have 'some reasonable ground underlying them.'" *Arias v.*
19  *Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (quoting *Ibarra*, 775 F.3d at 1199).
20  In *Arias*, the court found defendant's calculations reasonable as based on "personnel and payroll
21  data" and assumptions of "the frequency of violations of the sort alleged in the complaint." *Id.* at
22  926.  Here, Defendants used data, as cited in the Jahraus Declaration, and the allegations from
23  Plaintiff's complaint that "they were not receiving at least minimum wage for all hours worked."
24  (ECF No. 1-1 at 12.)  Therefore, the Court agrees with Defendants that such assumptions for rate
25  of violation are reasonable and will include $3,865,767.40 in the amount in controversy. *See*
26  *Kastler v. Oh My Green, Inc.*, No. 19-cv-02411-HSG, 2019 WL 5536198, at *4 (N.D. Cal Oct.
27  25, 2019) (stating that an assumption of one hour of unpaid minimum wage per week was a
28

"conservative estimate routinely endorsed by courts in evaluating CAFA's amount in controversy requirement when plaintiff fails to include specific allegations").

### ii. Meal and Rest Periods

Defendants use a 20% violation rate (one of five meal periods and rest periods per workweek being improper) to calculate the amount in controversy for the missed meal and rest period claims. (ECF No. 7 at 8.) Defendants base their violation rate assumption on Plaintiff's allegations of a "pattern and practice" of violations and the Jahraus Declaration. (*Id.*) Defendants calculate these violations by multiplying 24,947 aggregate workweeks x $18.35 (hourly wage) x 2 hours penalty per week = $915,554.90. (*Id.* at 9.) In moving to remand, Plaintiff argues that Defendants fail to demonstrate why the 20% violation rate should apply to 100% of the putative class. (ECF No. 12 at 7.)

At the outset, "Defendant is not 'required to comb through its records to identify and calculate the exact frequency of violations.'" *Andrade*, 2019 WL 4855997, at *4 (quoting *Lopez v. Aerotek, Inc.*, 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015)). While a 100% violation rate has been considered unreasonable when a complaint alleges a "pattern and practice" of violations, *Ibarra,* 775 F.3d at 1199, courts in the Ninth Circuit have frequently held a violation rate between 20% and 60% to be reasonable when the plaintiff claims a "pattern and practice" of violations. *See, e.g.*, *Hender*, WL 5959908, at *8 (finding a 20% violation rate reasonable when a plaintiff "claims a 'policy and practice' of denying employees meal and rest breaks"); *Olson v. Becton, Dickinson & Co.*, No. 19CV865-MMA (BGS), 2019 WL 4673329, at *4 (S.D. Cal. Sept. 25, 2019) (finding a 25% violation rate to be appropriate based on the plaintiff's "pattern and practice" allegation); *Elizarraz v. United Rentals, Inc.*, No. 218CV09533ODWJC, 2019 WL 1553664, at *3–4 (C.D. Cal. Apr. 9, 2019) (using a 50% violation rate for meal period claim and 30% violation rate for rest period claim); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (using a 60% violation rate for meal period claim and 30% violation rate for rest period claim); *Alvarez v. Office Depot, Inc.*, No. CV 17-7220 PSG (AFMx), 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (using a 60% violation rate for meal period claim).

This Court has held previously that a 20% to 60% violation rate for meal period and rest period violations to be reasonable. *See Sanchez v. Abbott Laboratories*, No. 2:20-cv-01436-TLN-AC, 2021 WL 2679057, at *4–5 (E.D. Cal. June 30, 2021); *see also Beckwith-Cohen v. VibrantCare Rehabilitation, Inc.*, No. 2:21-cv-01180-TLN-JDP, 2021 WL 5905956, at *4 (E.D. Cal. Dec. 14, 2021). Here, as in the foregoing cases, Plaintiff alleges a "pattern and practice" of meal and rest violations. (ECF No. 7 at 8.) Thus, Defendants' use of a 20% violation rate is reasonable. Therefore, the Court will include $915,554.90 in the amount in controversy.

      *iii.*  *Unpaid Overtime*

Plaintiff alleges Defendants violated California Labor Code § 510's overtime compensation rules by engaging in a "pattern or practice" of failing to pay overtime wages. (ECF No. 1-1 at 11, 14.) Defendants applied a 20% violation rate based on Plaintiff's "pattern or practice" allegations. (ECF No. 7 at 6.) Defendants calculated a total amount in controversy of $686,666.17 for unpaid overtime, which they reached as follows: (24,947 aggregate workweeks) x (1 representing the day per workweek, or a 20% violation rate) x (an average hourly wage rate of $18.35) x (an overtime rate of 1.5). (ECF No. 7 at 7.) In response, Plaintiff argues Defendants' calculation is incorrectly "applied to 100% of the putative class and is unsupported by Plaintiff's Complaint." (ECF No. 12 at 10.)

The Court finds Defendants' use of the 20% violation rate is reasonable. Indeed, "other courts have approved, persuasively, a 20% violation rate when a plaintiff, as plaintiff does here, alleges a 'pattern and practice' of defendants' failing to provide overtime compensation." *Hender*, 2020 WL 5959908, at *8 (citations omitted) (finding defendants' calculation based on a 20% violation rate, "a conservative estimate allowing for the possibility that not every putative class member worked overtime"). Moreover, Defendants "need not provide information proving up their liability to demonstrate the amount in controversy," as "such a requirement would contradict precedent." *Id.*; *see Arias*, 936 F.3d at 927 (finding "assumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them'").

7

Defendants' reliance on the 20% violation rate, based on Plaintiff's complaint alleging Defendants' "pattern and practice" of failing to pay overtime wages, is a reasonable assumption. Accordingly, the Court considers Defendants' estimate of $686,666.17 in unpaid overtime compensation as part of the amount in controversy.

In sum, Defendants' calculations reasonably and appropriately yield an amount in controversy of $5,467,988.47 for Plaintiff's unpaid overtime, meal period, rest period, and failure to pay minimum wage claims. This calculated amount in controversy does not account for wage statement violations, waiting time penalties, or attorney's fees — amounts that, if included, would bring the amount in controversy in greater excess of $5 million. Therefore, the Court finds Defendants have shown by a preponderance of the evidence that the amount in controversy in this case exceeds $5 million as required by CAFA.

### IV.   CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's Motion to Remand. (ECF No. 6.)

IT IS SO ORDERED.

DATE: February 24, 2022

Troy L. Nunley
United States District Judge