UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEILA KINCAID, | No. 2:21-cv-00863-TLN-JDP |
| Plaintiff, | |
| v. | **ORDER** |
| EDUCATION CREDIT MANAGEMENT CORPORATION, INC., ET AL. | |
| Defendants. | |

This matter is before the Court on Plaintiff Sheila Kincaid's ("Plaintiff") Motion for Class Certification. (ECF No. 32.) Defendants Education Credit Management Corporation ("ECMC") and ECMC Group (collectively, "Defendants") filed an opposition. (ECF No. 34.) Plaintiff filed a reply. (ECF No. 36.) Also before the Court is Defendants' Request to File a Sur-reply. (ECF No. 41.) Plaintiff filed an opposition. (ECF No. 42.) For the reasons set forth below, the Court GRANTS in part and DENIES in part Plaintiff's motion for class certification and DENIES Defendants' request to file a sur-reply.

///

///

///

///

1

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff brought this putative class action against Defendants for alleged wage and hour violations. (ECF No. 32.) Defendant ECMC is a student loan guarantor for the Federal Family Education Loan Program, and Defendant ECMC Group is ECMC's parent company. (*Id.* at 9.) Plaintiff was employed as a Loan Repayment Counselor from June 25, 2012, to August 4, 2018, at ECMC's location in Mather, California. (*Id.*) Plaintiff answered incoming calls from borrowers who were in danger of defaulting on their student loans and assisted them in finding repayment options. (*Id.*) Plaintiff was an hourly-paid employee and earned bonuses and commissions throughout her employment. (*Id.* at 9–10.)

Plaintiff alleges claims for violations of: (1) California Labor Code §§ 510 and 1198 (Unpaid Overtime); (2) California Labor Code §§ 226.7 and 512(a) (Unpaid Meal Period Premiums); (3) California Labor Code § 226.7 (Unpaid Rest Period Premiums); (4) California Labor Code §§ 1194, 1197, and 1197.1 (Unpaid Minimum Wages); (5) California Labor Code §§ 201 and 202 (Final Wages Not Timely Paid); (6) California Labor Code § 204 (Wages Not Timely Paid During Employment); (7) California Labor Code § 226(a) (Non-Compliant Wage Statements); (8) California Labor Code § 1174(d) (Failure to Keep Requisite Payroll Records); (9) California Labor Code §§ 2800 and 2802 (Unreimbursed Business Expenses); and (10) California Business & Professions Code §§ 17200, *et seq.* (ECF No. 1-1 at 4.)

In the instant motion, Plaintiff seeks to certify the following class and subclasses:

1. Class: All current and former hourly-paid or non-exempt employees who worked for ECMC and/or ECMC Group within the state of California at any time during the period from February 26, 2017, up to the deadline, to be determined by the Court at a later date, by which class members may opt-out after being provided notice of certification (the "Class Period").

2. Regular Rate Subclass: All members of the Class who received non-discretionary bonuses, commissions, and/or incentives which were not included in the regular rate of pay for purposes of overtime compensation.

3. Rounding Subclass: All members of the Class whose time entries were rounded by ECMC during the Class Period.

///

2

4. Off-the-Clock Subclass: All members of the Class who used ECMC's phone dialer system to perform their job duties during the Class Period.

5. Meal Period Subclass: All members of the Class who worked at least one shift of more than five hours at any time during the Class Period.

6. Rest Period Subclass: All members of the Class who worked at least one shift of three and one-half hours or more at any time during the Class Period.

7. 226.7 Premium Subclass: All members of the Class who received non-discretionary bonuses, commissions, and/or incentives which were not included in the regular rate of compensation for purposes of a premium payment made pursuant to California Labor Code § 226.7 at any time during the Class Period.

(ECF No. 32 at 2.)

## II.  STANDARD OF LAW

Federal Rule of Civil Procedure ("Rule") 23 governs class certification. "Parties seeking class certification bear the burden of demonstrating that they have met each of the four requirements of [Rule] 23(a) and at least one of the requirements of Rule 23(b)." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011) (citing *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001)).

Under Rule 23(a), the party seeking certification must establish: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). "These requirements effectively 'limit the class claims to those fairly encompassed by the named plaintiff's claims.'" *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (quoting *Gen. Tel. Co. of the Nw. v. Equal Employ. Opp. Comm'n*, 446 U.S. 318, 330 (1980)).

Plaintiff relies on Rule 23(b)(3) of the Rule 23(b) requirements. (ECF No. 32 at 20.) Under Rule 23(b)(3), "a class action may be maintained if Rule 23(a) is satisfied and if: . . . (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available

3

methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The decision to grant or deny class certification is within the trial court's discretion." *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010) (citation omitted).

### III. ANALYSIS

Plaintiff asserts all the Rule 23 requirements are satisfied for the putative class and subclasses. (ECF No. 32 at 20–28.) In opposition, Defendants claim Plaintiff has not met her burden for class certification as to several Rule 23 requirements. (ECF No. 34 at 6–21.) The Court will address the Rule 23(a) and Rule 23(b)(3) requirements in turn.

#### A. Rule 23(a)

##### i. *Numerosity*

The first Rule 23(a) prerequisite is numerosity. Fed. R. Civ. P. 23(a)(1). The class must be "so numerous that joinder of all members is impracticable." *Id.* The numerosity requirement does not impose a precise numerical threshold. *Gen. Tel. Co. of the Nw.*, 446 U.S. at 330.

In the instant case, Plaintiff alleges there are approximately 263 putative class members. (ECF No. 32 at 20.) In opposition, Defendants contend the Court should exclude 147 potential class members who signed Severance Agreements and 70 potential class members who worked through placement agencies. (ECF No. 34 at 6–7.) Defendants also argue Plaintiff cannot show numerosity as to those who received stay bonuses because only 13 employees received such a bonus. (*Id.* at 8.)

The Court finds Plaintiff's proposed class size satisfies the numerosity requirement. *See E.E.O.C. v. Kovacevich "5" Farms*, No. CV-F-06-165-OWW-TAG, 2007 WL 1174444, at *21 (E.D. Cal. Apr. 19, 2007) ("Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members."); *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (citing cases that found classes with fewer than 100 putative class members sufficient to satisfy numerosity). Even if the Court were to agree with Defendants that 147 severance workers and 70 placement agency workers should be excluded from the putative class, 46 individuals would remain, which is sufficient to meet numerosity in this district. *See Kovacevich "5" Farms*, 2007 WL 1174444, at *21.

4

Further, Defendants' argument that Plaintiff cannot show numerosity as to the Regular Rate Subclass based on stay bonuses is without merit. Plaintiff's putative Regular Rate Subclass includes employees who received non-discretionary bonuses, commissions, and incentives — not just stay bonuses. (ECF No. 32 at 2.) Additionally, Plaintiff provided the Court with time and pay data which shows there were 94 individuals with pay periods where the hourly rate used to compute overtime pay did not consider non-discretionary earnings. (ECF No. 32-4 at 6.) Ninety-four individuals' pay periods are sufficient to meet numerosity. *See Kovacevich "5" Farms*, 2007 WL 1174444, at *21.

Accordingly, the Court concludes Plaintiff satisfies the numerosity requirement.

### ii.    *Commonality/Predominance*

Because the parties address Rule 23(a)(2) commonality and Rule 23(b)(3) predominance together, the Court will address these requirements together for each proposed subclass.

To establish commonality, there must be "questions of law or fact that are common to the class." Fed. R. Civ. P. 23(a)(2). Commonality exists when class members' claims depend on a common contention that is "capable of class wide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Further, the "rigorous analysis" under Rule 23(a) "sometimes [requires] the court to probe behind the pleadings before coming to rest on the certification issue." *Id.* at 350–51 (quotations omitted). "[T]he merits of the class members' substantive claims are often highly relevant when determining whether to certify a class," and "a district court must consider the merits" if they overlap with Rule 23(a)'s requirements. *Ellis*, 657 F.3d at 981. As such, a court must resolve any factual disputes "to determine whether there was a common pattern and practice that could affect the class as a whole." *Id.* at 983; *see Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013).

The predominance requirement is set forth in Rule 23(b)(3). To meet predominance, common questions of law and fact must predominate over individual questions. Fed. R. Civ. P. 23(b)(3). The predominance inquiry assesses whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623

1  (1997). "This analysis presumes that the existence of common issues of fact or law have been
2  established pursuant to Rule 23(a)(2)," but goes a step further and focuses on the relationship
3  between common and individual issues. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir.
4  1998). "When common questions present a significant aspect of the case and they can be
5  resolved for all members of the class in a single adjudication, there is clear justification for
6  handling the dispute on a representative rather than on an individual basis." *Id.* (citation omitted).

a. Regular Rate Subclass

8  California requires the payment of overtime compensation at the rate of one and one-
9  half times the regular rate of pay for hours worked in excess of eight in a day or forty in a
10 week, and at two times the regular rate of pay for hours worked in excess of twelve in a day.
11 Cal. Lab. Code § 510(a). The regular rate of pay is determined by adding all sources of
12 remuneration (except for specific statutory exclusions) given to the employee during the pay
13 period and dividing that sum by the number of total hours worked during the pay period.
14 *Huntington Mem'l Hosp. v. Super. Ct.*, 131 Cal. App. 4th 893, 902–03 (2005). Non-
15 discretionary payments are to be included in the regular rate of pay. *Ferra v. Loews*
16 *Hollywood Hotel, LLC*, 11 Cal. 5th 858, 878 (2021).

17 As to the Regular Rate Subclass, Plaintiff asserts the common questions are whether
18 Defendants' incentive payments were non-discretionary and whether Defendants failed to include
19 these payments in the regular rate of pay for purposes of overtime compensation. (ECF No. 32 at
20 21.) Plaintiff claims Defendants have a uniform method of calculating the regular rate of pay and
21 Defendants' policies for issuing incentive pay are memorialized in writing pursuant to bonus and
22 commission plans. (*Id.*) Plaintiff provided expert data that reflects 94 pay periods in which a stay
23 bonus or commission was earned, but overtime was paid at one and one-half times the base rate
24 of pay without non-discretionary incentive payments included. (*Id.* at 10.) In opposition,
25 Defendants argue Plaintiff fails to provide any evidence that employees were not paid overtime
26 based on a regular rate that included incentive payments and bonuses. (ECF No. 34 at 7–8.)

27 The Court finds there are questions of law and fact that are common and predominate the
28 Regular Rate Subclass. Plaintiff identified Defendants' uniform policies for when an employee

1 earns overtime compensation. (ECF No. 32-2 at 216.) Further, Plaintiff provides evidence that
2 Defendants did not acknowledge bonuses or commissions within the regular rate for purposes of
3 overtime compensation for at least 94 pay periods. Such a showing is sufficient to satisfy
4 commonality and predominance. *See Culley v. Lincare Inc.*, No. 2:15-CV-00081-MCE-CMK,
5 2016 WL 4208567, at *6 (E.D. Cal. Aug. 10, 2016) (finding the plaintiff made a sufficient
6 showing of predominance since the defendants did not include nondiscretionary bonuses in its
7 overtime calculations and failed to submit persuasive evidence of the bonus plan was not
8 uniformly applied); *Chavez v. Lumber Liquidators, Inc.*, No. CV-09-4812-SC, 2012 WL
9 1004850, at *6 (N.D. Cal. Mar. 26, 2012) (holding employees show commonality and
10 predominance if their employer had a uniform practice or policy for calculating overtime pay that
11 did not include bonuses or other non-discretionary pay).

12 Moreover, Defendants' opposition consists primarily of arguments that Plaintiff cannot
13 prevail on the merits of her claim. However, those issues are beyond the scope of whether a class
14 can be certified. *See Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 332 (1980)
15 (recognizing the question of certification is distinct from the merits and ancillary to the litigation
16 of substantive claims). While substantive issues may inform the court in determining matters of
17 commonality and predominance, the question of "whether a class should be certified
18 [nonetheless] depends entirely on whether the proposal satisfies the requirements of [Rule 23]."
19 *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980).

20 Accordingly, the Court concludes the commonality and predominance requirements are
21 satisfied for the Regular Rate Subclass.

                             b.  <u>Rounding Subclass</u>

23 California law "permits employers to use a rounding policy for recording and
24 compensating employee time as long as the employer's rounding policy does not 'consistently
25 result[ ] in a failure to pay employees for time worked.'" *See's Candy Shops, Inc. v. Super. Ct.*,
26 210 Cal. App. 4th 889, 901 (2012). A rounding policy is lawful if it is "fair and neutral on its
27 face and 'it is used in such a manner that it will not result, over a period of time, in failure to
28 compensate the employees properly for all the time they have actually worked.'" *Id.* at 907.

7

1    Plaintiff argues common questions exist because Defendants implemented a uniform
2 rounding policy that applied to all putative class members. (ECF No. 32 at 22.) Further, Plaintiff
3 cites evidence from an expert in statistics showing that in 51.34% of instances when Defendant
4 implemented rounding, Defendants' rounding policy resulted in putative class members being
5 underpaid compared to their actual recorded hours. (*Id.* at 11.)

6    In opposition, Defendants argue Plaintiff's rounding claims require significant
7 individualized inquiries that preclude certification. (ECF No. 34 at 9–10.) Specifically,
8 Defendants assert there are situations where employees are engaged in non-work while clocked in
9 and the existence, nature, and amount of this time must be individually assessed to determine if
10 the rounding system is fair. (*Id.* at 9.)

11   As to commonality, the Court finds there are questions of law and fact common to the
12 Rounding Subclass. Plaintiff presents sufficient evidence that Defendants have a common
13 rounding policy that results in employees being underpaid. Whether Defendants have a policy or
14 practice that restricted its employees "in a manner that amounted to employer control during the
15 period between their . . . rounded shift-start and shift-end times," is a common question, capable
16 of class-wide resolution. *Madeira v. Converse, Inc.*, No. 22-55161, 2023 WL 5275011, at *1–2
17 (9th Cir. Aug. 16, 2023). A uniform policy further raises the common issue of whether the
18 rounding policy is unlawful as applied. *See See's Candy Shops, Inc.*, 210 Cal. App. 4th at 895;
19 *Selk v. Pioneers Mem'l Healthcare Dist.*, No. 13-CV-0244-DMS-BGS, 2014 WL 12729167, at *4
20 (S.D. Cal. Apr. 22, 2014) (finding commonality met where facially neutral rounding policy was
21 alleged to be unlawful as applied). Additionally, there are common methods of proof —
22 specifically, Defendants' timekeeping records — that will facilitate class-wide resolution. *See*
23 *Selk*, 2014 WL 12729167, at *4. Therefore, the commonality requirement is satisfied.

24   As to predominance, Defendants argue courts in this district have denied certification of
25 rounding claims due to individualized inquiries of whether employees were working during the
26 minutes spent while clocked in before the start time of their shift. (ECF No. 34 at 9.) In support,
27 Defendants cite: (1) *Walter v. Leprino Foods Co.*, 670 F. Supp. 3d 1035 (E.D. Cal. 2023); and (2)
28 *Ali v. Setton Pistachio of Terra Bella, Inc.*, No. 1:19-CV-00-959-JLT-BAM, 2023 WL 2681973

(E.D. Cal. Mar. 29, 2023). (*Id.*) However, Defendants fail to provide any meaningful discussion about *Walter* or *Ali*, and both cases appear to be distinguishable from the instant case.

First, in *Walter*, the court denied certification of a pre-shift rounding claim because the evidence showed "that the experiences of employees before they clocked in for their shifts 'varie[d] from member to member.'" 670 F. Supp. 3d at 1053. The court also found the plaintiff failed to provide "sufficient common evidence indicating a reason why all putative class members had to begin their pre-shift requirements [such as changing into uniform, completing sanitization procedures, and traveling to pre-shift meeting areas] before the start of their shifts." *Id.* at 1054.

Importantly, the plaintiff in *Walter* did not argue the employer's rounding policy was unfair or not neutral on its face. *Id.* at 1052. In contrast, Plaintiff in the instant case argues Defendants' rounding policy was not neutral, and she provides evidence that Defendants' rounding policy resulted in putative class members being underpaid 51.34% of the time. (ECF No. 32 at 11.) Defendants do not rebut Plaintiff's evidence on this point. Additionally, courts have found common questions predominate when a rounding policy applies uniformly to all non-exempt employees. *See Lemus v. Denny's Inc.*, No. 10-CV-2061-CAB (WVG), 2013 WL 12307878, at *5, 11 (S.D. Cal. Mar. 21, 2013) (finding individualized inquiries are not required because a sampling of employee records could be taken to determine whether, overall, the employer's rounding practice is fair and neutral on its face); *Moreyra v. Fresenius Med. Care Holdings, Inc.*, No. SA-CV-10-00517-JVS (RZx), 2012 WL 13014985, at *14 (C.D. Cal. Mar. 7, 2012) (holding that to determine which employees netted less pay from the uniform rounding practice would not require individualized fact-intensive inquires).

Second, in *Ali*, the court adopted in part and rejected in part findings and recommendations from a magistrate judge on a motion for class certification. 2023 WL 2681973, at *1. The court noted that the plaintiff did not "seriously contest" the magistrate judge's conclusion "that individualized determinations would predominate the question of whether employees did in fact perform work during the few minutes between when they clocked in and when their shift started." *Id.* at *2. However, the *Ali* court went on to certify the class "as to the employer control theory of liability only." *Id.* at *3.

In the absence of meaningful argument from Defendants about *Ali*, the Court finds it to be unpersuasive for two reasons. First, neither party addresses the employer control theory of liability. Second, the employers in both *Ali* and *Walter* provided several declarations from employees suggesting that individual inquiries would predominate. In the instant case, Defendants argue in a conclusory fashion that "there are situations in which employees engaged in nonwork while clocked in." (ECF No. 34 at 9.) Defendants fail to point to any evidence in its Rounding Subclass argument to suggest that individualized inquires would predominate over class-wide questions regarding the rounding policy. (*See id.*)

Therefore, the Court concludes the Rounding Subclass meets the commonality and predominance requirements.

c. Off-the-Clock Subclass

To certify an off-the-clock claim, "a plaintiff must present substantial evidence that a company policy required or pressured employees to work off the clock, employees actually did work off the clock, and the employer had actual or constructive knowledge that they did so." *Moore v. Int'l Cosms. & Perfumes, Inc.*, No. ED-CV-14-1179-DMG (DTBx), 2016 WL 7644849, at *16 (C.D. Cal. Mar. 17, 2016) (citation omitted).

Plaintiff argues Defendants' policy against unapproved overtime coupled with Defendants' demanding quotas and performance metrics required putative class members who used the dialer system to perform off-the-clock work. (ECF No. 32 at 23.) Plaintiff asserts employees had to log into the dialer system during the entirety of their shift, apart from meal periods, so Defendants could monitor employees' performance. (*Id.* at 12.) In opposition, Defendants argue ECMC had a lawful written policy that clearly communicated employees were not to work off the clock and Plaintiff's theory would require fact-specific inquiries concerning each member of the proposed subclass. (ECF No. 34 at 10–11.)

Plaintiff fails to persuade the Court that common questions predominate the Off-the-Clock Subclass. Plaintiff string cites several cases that she contends support her position. (ECF No. 32 at 23.) However, Plaintiff fails to sufficiently address these cases, and they appear to be factually distinct from the instant case.

1        For example, Plaintiff cites *Moore*. (*Id.*)  In *Moore*, the court found the plaintiffs had
2   "submitted substantial evidence that there was a uniform corporate policy of imposing onerous
3   sales quotas on [Fragrance Sales Consultants ("FSCs")] which were difficult or impossible to
4   meet during their allotted work period." 2016 WL 7644849, at *16.  The court cited testimony
5   from FSCs that they frequently worked extra, unrecorded hours to meet sales quotas and that they
6   were often instructed to come in early by managers. *Id.*  Additionally, the court cited testimony
7   from managers stating they routinely rejected hours from FSCs that went over allotted hours,
8   despite knowing FSCs worked the extra hours to meet their sales quotas and that the pressure to
9   do so came from upper management. *Id.*  Also before the court was testimony from managers
10  that there was a company policy of putting considerable pressure on FSCs to meet sales quotas.
11  *Id.*  The court found this evidence sufficient to establish common questions that predominated as
12  to "the existence of policies and practices which effectively pressured employees to work off the
13  clock, whether employees were actually working off the clock, and whether the employer had
14  actual or constructive knowledge that they were doing so." *Id.* at *17.
15       Plaintiff also cites *Ribot*. (ECF No. 32 at 23.)  In *Ribot*, the court found the plaintiffs
16  established commonality and predominance for an off-the-clock class where there was evidence
17  "that supervisors instructed employees to arrive early to perform functions necessary to being
18  ready to work at their designated shift time" in conjunction with a "schedule adherence" metric
19  used in performance evaluations that encouraged pre-shift work. *Ribot v. Farmers Ins. Grp.*, No.
20  CV-11-02404-DDP-FMOX, 2013 WL 3778784, at *6–8 (C.D. Cal. July 17, 2013), *modified on*
21  *clarification*, No. CV-11-02404-DDP-FMOX, 2013 WL 5351085 (C.D. Cal. Sept. 24, 2013).
22       The *Moore* and *Ribot* courts were presented with significantly more evidence than
23  Plaintiff provides in the instant case.  Plaintiff submits declarations from six employees other than
24  herself.  The declarants held different titles and worked in different departments. (ECF No. 32-5
25  (worked as an Account Specialist in the Collections Department); ECF No. 32-6 (worked as an
26  Operations Specialist); ECF No. 32-7 (worked as a Customer Service Representative); ECF No.
27  32-8 (worked as a Default Prevention Counselor); ECF No. 32-9 (worked as a Loan Repayment
28  Counselor); ECF No. 32-10 (worked as a Revenue Specialist in the Collections Department).)

11

Despite holding different positions, the declarants describe several common issues related to their use of the dialer system that required them to perform off-the-clock work, including: (1) the expectation that they be logged into the dialer system and take calls right at the start of their scheduled shifts despite needing to log into several databases and review important messages beforehand; (2) close monitoring of the amount of time spent on "pause" or spent entering notes for accounts at the end of calls; and (3) the potential for negative performance evaluations. (*See* ECF Nos. 32-5–32-10.) However, the declarants describe somewhat different experiences. For example, the declarants report spending different amounts of time booting up before their shift. (*See, e.g.*, ECF No. 32-7 (declarant spent 7–8 minutes each morning working off the clock); ECF No. 32-5 (declarant spent 10–30 minutes each morning working off the clock).) As another example, some declarants report being subject to strict quotas, while others do not. (*Compare* ECF Nos. 32-6, 32-9 (declarants reference being subject to quotas) *with* 32-5, 32-7, 32-8, 32-10 (declarants do not reference being subject to quotas).)

The distinctions between the declarants' experiences suggest individualized inquiries will predominate over any common questions. *See Pittmon v. CACI Int'l, Inc.*, No. CV-21-02044-CJC (JEMx), 2022 WL 4596554, at *4 (C.D. Cal. Aug. 11, 2022) (denying class certification for an off-the-clock claim where there were "considerable variations" in employees' experiences, such as being subject to different production metrics depending on their level). Moreover, none of the declarations sufficiently demonstrate that Defendants had actual or constructive knowledge that employees were working off-the-clock. This stands in stark contrast to the evidence in *Moore* and *Ribot* where supervisors instructed employees to arrive at work early to perform functions necessary to being ready for work at their designated shift time. *Moore*, 2016 WL 7644849, at *16–17; *Ribot*, 2013 WL 3778784, at *6. In addition, compared to *Moore* and *Ribot*, there is far less evidence of a uniform company policy to pressure employees to work unrecorded hours. *See Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1051–52 (2012) (finding the plaintiff failed to present evidence of a systematic company policy to pressure or require employees to work off-the-clock and "anecdotal evidence of a handful of instances in which employees worked off-the-clock" was not sufficient to establish commonality).

For these reasons, the Court DENIES Plaintiff's motion to certify the Off-the-Clock Subclass.

####  d. Meal Period Subclass

The California Labor Code provides "[a]n employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes . . . [and] [a]n employer shall not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes …." Cal. Lab. Code § 512(a).

Plaintiff addresses the Meal and Rest Period Subclasses together. (ECF No. 32 at 23–25.) Because of this, the Court had difficulty determining which arguments went to each subclass. From what the Court can glean, Plaintiff argues there are common questions as to whether Meal Period Subclass members were provided with lawful meal periods. (ECF No. 32 at 24.) Plaintiff asserts Defendants maintained an unlawful written meal period policy and as a result of its quotas, Defendants failed to provide putative class members with compliant meal periods. (*Id.*) Plaintiff also provides expert evidence that Defendants' records reflect 30.9% of shifts greater than five hours had a first meal period violation and 99.2% of shifts greater than ten hours had a meal period violation. (*Id.*)

In opposition, Defendants argue Plaintiff misrepresents ECMC's written meal policy and fails to provide substantial evidence supporting any other certifiable policy. (ECF No. 34 at 16.) Defendants also contend individualized inquiries are required to determine whether employees were responsible for their meal breaks non-compliance. (*Id.* at 17.)

"If time records show noncompliant meal periods, then a rebuttable presumption of liability arises." *Donohue v. AMN Servs., LLC*, 11 Cal. 5th 58, 78 (2021); *see also Estrada v. Royalty Carpet Mills, Inc.*, 76 Cal. App. 5th 685, 723 (2022) (applying *Donohue*'s "rebuttable presumption" standard in class certification context). The employer then "may rebut the presumption" with evidence of proper compensation or that the employees had in fact been provided compliant meal periods during which they chose to work. *Donohue*, 11 Cal. 5th at 77–78; *Estrada*, 76 Cal. App. 5th at 726 (finding an employer may rebut the presumption in class

13

1 certification context by showing that "a significant number of employees voluntarily chose to skip
2 their meal breaks, creating individualized issues of liability").

3       Plaintiff submits time records and expert evidence demonstrating the existence of meal
4 period violations. (ECF No. 32 at 16.) Plaintiff also submits declarations from employees stating
5 there were times they were unable to take uninterrupted meal periods of at least 30 minutes.
6 (ECF Nos. 32-6, 32-7, 32-8, 32-9.) The Court finds this is sufficient to trigger the *Donohue*
7 presumption. The Court also finds Defendants have not rebutted that presumption. Defendants
8 provided eleven employee declarations attesting to compliant meal periods. (ECF No. 34-1 at 5–
9 50.) However, eleven declarations, when considering the hundreds of potential members of the
10 proposed class, are insufficient to rebut the *Donohue* presumption. *See Garcia v. Cent. Coast*
11 *Rests., Inc.*, No. 18-CV-02370-RS, 2022 WL 657972, at *6 (N.D. Cal. Mar. 4, 2022) (finding five
12 declarations insufficient when there were thousands of potential class members); *see also Walter*,
13 670 F. Supp. 3d at 1056 ("Although these declarations and testimonies evince evidence of
14 compliant meal periods, they are not evidence that the employees received proper compensation
15 for untimely meal breaks or that they voluntarily chose to miss some or all of their meal
16 periods."). The Court also notes Defendants fail to cite any post-*Donohue* authority to support its
17 contention that they have sufficiently shown individualized inquiries will predominate, despite
18 time record evidence showing meal period violations. (*See* ECF No. 34 at 16–19.)

19       Accordingly, the Court concludes the Meal Period Subclass meets the commonality and
20 predominance requirements.

21 <center>e.   <u>Rest Period Subclass</u></center>

22       The Industrial Welfare Commission Wage Order mandates employees to receive one 10-
23 minute rest period for shifts between three and one-half and six hours in length, two 10-minute
24 rest periods for shifts between six and ten hours, and three 10-minute rest periods for shifts
25 between ten and fourteen hours. *See* Cal. Code Regs., tit. 8, § 11010(12).

26       Plaintiff claims as a result of Defendants' quotas, Defendants failed to provide putative
27 class members with compliant rest periods. (ECF No. 32 at 24.) Plaintiff argues Defendants'
28 policy of failing to make any rest premium payments is also a certifiable issue. (*Id.*) In

1 opposition, Defendants assert Plaintiff fails to show a non-compliant written policy regarding
2 employee's rest break rights.  (ECF No. 34 at 20.)  Defendants also contend individualized
3 inquiries would be necessary to determine why employees may not have taken compliant rest
4 breaks.  (*Id.*)

5 In the employee declarations submitted by Plaintiff, the declarants state they experienced
6 missed, shortened, or interrupted rest breaks due to Defendants' intense quotas and monitoring
7 practices.  (ECF No. 32-5–ECF No. 32-9.)  Moreover, Defendants do not dispute Plaintiff's
8 assertion that there is no evidence Defendants ever paid a rest period premium.  (*See* ECF No. 34
9 at 20.)  This evidence is sufficient to show commonality and predominance.  *See Meek v.*
10 *SkyWest, Inc.*, 562 F. Supp. 3d 488, 500 (N.D. Cal. 2021) (finding declarations that employees
11 did not always get rest breaks and employer's concession that it did not pay any rest period
12 premiums were sufficient to show commonality and predominance); *Antemate v. Estenson*
13 *Logistics, LLC*, No. CV-14-5255-DSF (RZx), 2015 WL 3822267, at *2–5 (C.D. Cal. June 15,
14 2015) (finding common questions predominated over individualized inquiries where the plaintiff
15 provided evidence suggesting a company's informal policies and practices created an
16 environment in which employees were routinely pressured not to take compliant breaks); *see also*
17 *Campbell v. Vitran Express Inc*, No. CV 11-5029 RGK (SHX), 2015 WL 7176110, at *7 (C.D.
18 Cal. Nov. 12, 2015) ("Courts generally hold that sufficient evidence of an unofficial policy exists
19 where the plaintiff offers multiple declarations from employees attesting to the uniform
20 application of the policy.").  The Court also notes Defendants fail to cite any legal authority to
21 support its argument that individualized inquiries will predominate over common questions in this
22 case.  (*See* ECF No. 34 at 20.)

23 For the foregoing reasons and in the absence of authority to the contrary, the Court finds
24 Plaintiff satisfies commonality and predominance for the Rest Period Subclass.

25 f.  § 226.7 Premium Subclass

26 If an employer fails to provide any employee a meal or rest break, it must pay the
27 employee an additional hour of pay — a premium wage — at the employee's regular rate.  Cal.
28 Lab. Code § 226.7(c).  Similar to Plaintiff's argument about the Regular Rate Subclass in the

15

1  context of overtime payments, Plaintiff argues the common questions for this subclass are
2  whether Defendants included all forms of nondiscretionary compensation when calculating §
3  226.7 premiums and, if not, whether any failure to do so violates California law.  (ECF No. 32 at
4  25.)  In opposition, Defendant contends this issue inherently necessitates individualized inquiries
5  and, as a result, is unsuitable for certification.  (ECF No. 34 at 21.)

6  Defendants' arguments as to this subclass appear to be derivative to its arguments
7  regarding the Meal Period Subclass.  Because the Court found Plaintiff satisfied commonality and
8  predominance as to the Meal Period Subclass, the Court finds those elements are also met as to
9  the § 226.7 Subclass.  *See Fodera v. Equinox Holdings, Inc.*, 341 F.R.D. 616, 632 (N.D. Cal.
10 2022) ("The plaintiffs have shown a common, predominate question: whether Equinox paid
11 employees less than the regular rate of compensation for missed meal breaks.").

12 Accordingly, the Court concludes the § 226.7 Premium Subclass meets the commonality
13 and predominance requirements.

14                              *iii.    Typicality*

15 The third Rule 23(a) prerequisite is typicality.  Fed. R. Civ. P. 23(a)(3).  The
16 representative plaintiff's claims must be "typical of the claims . . . of the class."  *Id.*  The purpose
17 of the typicality requirement is to ensure the representative plaintiff and the class members'
18 interests are aligned.  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir.
19 2010).  "Under [Rule 23(a)'s] permissive standards, representative claims are 'typical' if they are
20 reasonably co-extensive with those of absent class members[.] [T]hey need not be substantially
21 identical."  *Hanlon*, 150 F.3d at 1175.  The test of typicality is "whether other members have the
22 same or similar injury, whether the action is based on conduct, which is not unique to the named
23 plaintiffs, and whether other class members have been injured by the same course of conduct."
24 *Wolin*, 617 F.3d at 1175 (citation omitted).

25 Plaintiff argues her claims are typical of the class and subclasses.  (ECF No. 32 at 26.)
26 Specifically, during Plaintiff's six-year tenure with ECMC: she was a non-exempt, hourly paid
27 employee; she was subjected to Defendants' rounding policy; she used Defendants' dialer system;
28 she was exposed to Defendants' strict quotas that resulted in off-the-clock work and non-

16

1 compliant meal and rest periods; and she earned non-discretionary bonuses and commissions.
2 (*Id.*) In opposition, Defendants contend "Plaintiff was not paid any stay bonus" and thus "cannot
3 show typicality that she is an appropriate class representative" for the stay bonuses subclass.
4 (ECF No. 34 at 8.)

5       The Court finds Plaintiff's claims are typical of the class and subclasses. Representative
6 claims need not be substantially identical to the absent class members claims, just reasonably co-
7 extensive. *Hanlon*, 150 F.3d at 1175. Although Defendants claim Plaintiff was not paid stay
8 bonuses, Plaintiff asserts she "earned non-discretionary bonuses and commissions" while
9 employed with Defendants, which the Court concludes is sufficient to meet the "reasonably co-
10 extensive" requirement. (ECF No. 32-11 at 1.) As such, typicality is met.

11                         *iv.*    *Adequate Representatives*

12       The final Rule 23(a) prerequisite is adequacy of representation. Fed. R. Civ. P. 23(a)(4).
13 "[T]he representative parties [must] fairly and adequately protect the interests of the class." *Id.*
14 In determining whether that requirement is met, the Court asks two questions: (1) does the
15 representative plaintiff and her counsel have any conflicts of interest with other class members;
16 and (2) will the representative plaintiff and her counsel prosecute the action vigorously on behalf
17 of the class? *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citation omitted).

18       Plaintiff asserts both she and her counsel "ha[ve] no conflicts of interest with the putative
19 class members and ha[ve] already demonstrated [their] willingness to advocate on their behalf."
20 (ECF No. 32 at 27.) Defendants do not oppose this requirement. Therefore, the Court concludes
21 the representative parties will fairly and adequately protect the interests of the putative class.

22            B.    <u>Rule 23(b)(3)</u>

23       A proposed class action must also fit within at least one of the three categories of class
24 actions laid out in Rule 23(b). Fed. R. Civ. P. 23(b); *Dukes*, 564 U.S. at 345. In the instant case,
25 Plaintiff seeks certification under Rule 23(b)(3). (ECF No. 32 at 20.) Rule 23(b)(3) provides a
26 class may be certified if a court finds "the questions of law and fact common to class members
27 predominate over any questions affecting only individual members, and that a class action is
28 superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.

1 R. Civ. P. 23(b)(3). These requirements are commonly known as predominance and
2 superiority. *See Amchem Prods., Inc.*, 521 U.S. at 615. The Court addressed predominance
3 above, so the only remaining issue is superiority.

4 If there are no viable alternatives to a class action, the class action method is necessarily
5 superior. *Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d
6 1152, 1163 (9th Cir. 2001). Plaintiff claims because there are common questions of law and fact
7 that predominate, judicial economy and the parties' resources will be best met by a class action
8 trial. (ECF No. 32 at 27.) Moreover, Plaintiff asserts a class action is desirable because the class
9 members do not have an interest in individually controlling the prosecution of separate actions as
10 the damages suffered by the class members are relatively small compared to the expense of
11 individual litigation. (*Id.* at 27–28.) Defendant does not challenge this requirement.

12 The Court finds a class action is superior to other available methods for fairly and
13 efficiently adjudicating this controversy. The Court believes a large percentage of these class
14 members would have little incentive to prosecute their own claims because their opportunity for
15 recovery pales in comparison to the expense. *Las Vegas Sands, Inc.*, 244 F.3d at 1163; *Wolin*,
16 617 F.3d at 1176 ("Forcing individual[s] . . . to litigate their cases, particularly where common
17 issues predominate for the proposed class, is an inferior method of adjudication.").

18 Therefore, the Court concludes a class action is superior to other available methods of
19 adjudicating the controversy.

20                 C.      Defendants' Request to File a Sur-Reply

21 On July 26, 2023, Defendants requested to file a sur-reply. (ECF No. 41.) Defendants
22 argue good cause exists for filing a sur-reply because Plaintiff's reply raised new issues that
23 Defendants did not have the opportunity to address. (*Id.* at 1.) In opposition, Plaintiff asserts no
24 new arguments were raised and "Defendants simply seem to want the last word with respect to
25 whether class certification should be granted." (ECF No. 42 at 2.)

26 A sur-reply is not authorized by the Local Rules of Practice nor the Federal Rules of Civil
27 Procedure and is generally viewed by courts with disfavor. *Hill v. England*, No. CV-F05-0869-
28 REC-TAG, 2005 WL 3031136, at *1 (E.D. Cal. Nov. 8, 2005); *Garcia v. Biter*, 195 F. Supp. 3d

1131, 1133–34 (E.D. Cal. 2016). However, it is within the Court's discretion to permit the filing of a sur-reply only where a valid reason for such additional briefing exists, such as when the movant raises new arguments in its reply brief. *Hill*, 2005 WL 3031136, at *1 (quoting *Fredrick v. Mercedes-Benz USA, LLC*, 366 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005).

The Court finds Defendants' sur-reply unnecessary because the Court did not rely on any purportedly new arguments raised in Plaintiff's reply brief. As Defendants have not offered any valid basis upon which the Court should exercise its discretion to permit the filing of a sur-reply, Defendants' request to file a sur-reply is DENIED.

### IV.    CONCLUSION

Therefore, Plaintiff's Motion for Class Certification is GRANTED in part and DENIED in part. (ECF No. 32.) Defendants' Request to File a Sur-reply is DENIED. (ECF No. 41.)

The Court certifies the following classes:

1. Class: All current and former hourly-paid or non-exempt employees who worked for ECMC and/or ECMC Group within the state of California at any time during the period from February 26, 2017, up to the deadline, to be determined by the Court at a later date, by which class members may opt-out after being provided notice of certification (the "Class Period").

2. Regular Rate Subclass: All members of the Class who received non-discretionary bonuses, commissions, and/or incentives which were not included in the regular rate of pay for purposes of overtime compensation.

3. Rounding Subclass: All members of the Class whose time entries were rounded by ECMC during the Class Period.

4. Meal Period Subclass: All members of the Class who worked at least one shift of more than five hours at any time during the Class Period.

5. Rest Period Subclass: All members of the Class who worked at least one shift of three and one-half hours or more at any time during the Class Period.

6. 226.7 Premium Subclass: All members of the Class who received non-discretionary bonuses, commissions, and/or incentives which were not included in the regular rate of compensation for purposes of a premium payment made pursuant to California Labor Code § 226.7 at any time during the Class Period.

The Court hereby appoints Edwin Aiwazian, Arby Aiwazian, and Tara Zabehi of Lawyers for Justice, PC and Jill J. Parker and S. Emi Minne of Parker & Minne, LLP as Class Counsel.

Plaintiff Sheila Kincaid is hereby appointed as the Class Representative.  The parties are ORDERED to file Joint Status Report not later than thirty (30) days from the electronic filing date of this Order proposing dates and deadlines moving forward.

      IT IS SO ORDERED.

Date: March 29, 2024

                                                Troy L. Nunley  
                                                United States District Judge